Nichols, C. J.
The sole question involved in this case has reference to the right of an injured employe, denied recovery of compensation by the Industrial Commission, to appeal from such decision to the common pleas court, where the employer was one of the class authorized by law to elect to pay compensation direct to the employe injured in the course of his employment.
Both the court of common pleas and court of appeals of Cuyahoga county held that the right to appeal did not exist.
It will be seen at once that if this decision is in accordance with law there is existent a marked discrimination in the law, in favor of the employe of the employer who contributes to the state fund, and against the employe of the employer who elects to pay direct.
The discrimination is a substantial one, and, if the judgment below is to stand, it raises a grave question as to the constitutionality of Section 22 of the Workmen’s Compensation Act, providing for self-insurance and direct payment.
This section was assailed in the case of The State, ex rel. Turner, Attorney General, v. The United States Fidelity & Guaranty Company of Baltimore, Md., ante, 250, the claim being there *459 made that the provisions of Section 22 of the act are unconstitutional, in that there is thereby created an arbitrary, unjust and unlawful discrimination among the several classes of employes, and that there is no provision in the section by which an employe of such employer, who makes application to the board for compensation and is refused, may have any relief whatever, either against the state or against the employer direct.
Indeed it is difficult to see, if this contention is sound, how the provisions of Section 22 could be retained as a part of the Workmen’s Compensation Act.
Employes in exactly similar employments, who are employed in different establishments, one of which pays into the fund and the other paying direct, would have different rights without having any voice in the matter; or, perhaps a more accurate statement would be, that the one class would have certain rights wholly denied to the other class.
The employe of a self-insuring employer would be denied the right of appeal granted to one employed by an employer who contributes to the fund, and this notwithstanding the employe of the self-insuring employer had remained in the employ relying on the fact that the state, through its duly established agency, had taken all the necessary steps to provide for his compensation as fully and completely as it had provided for the compensation of employes of those who paid into the fund. The validity of any such discrimination or classification might well be questioned.
*460 This court, in the case just referred to, refused to sanction the contention made as to the unconstitutionality of Section 22, and upheld it in its entirety; holding that the general assembly, in permitting employers who so elected to carry their own insurance, had safeguarded fully the legal rights of all employes of such employers, and, in case of denial of participation in the fund, had provided the same remedies to the one class as to the other.
If the law had provided a different remedy in the one case from that of the other, the classification thus made, if fair and reasonable, would not have defeated the provision of Section 22. But if, as held in the court of appeals, it provided for an appeal in the one instance and denied it in the other, then serious doubts of its validity at once arise.
This is especially so when it is observed that under the Workmen’s Compensation Act no provision was made, nor is claimed by anyone to have been made, whereby the employe of the self-compensating employer could have a cause of action against such employer direct, in the event of a denial of his claim by the Industrial Commission; the general effect being that, if he could not appeal as against the Industrial Commission, and by submitting his claim for damages to such tribunal foreclosed himself from suing his employer in an original action, he would be wholly without any remedy.
' It is quite clear that the general assembly did not contemplate any such condition of affairs, and, unless the plain language of the statute forbids giving the law a construction differing from that *461 accorded it by the courts now under review, we are confronted with the dilemma, if we affirm the judgments of the lower courts, of making a finding that in effect would be to hold a very important part of the Workmen’s Compensation Act unconstitutional.
A construction working such havoc should be avoided, unless the plain language of the statute forbids any other construction. It is the clear duty of the courts to avoid, if at all possible, the rendering of a judgment in a collateral proceeding that would have the necessary effect of destroying a law by indirection.
In the consideration of the question involved in the instant case the court should not ignore the consequence of its decision; especially since it is all but certain, that if appeal be denied employes of the class of plaintiff in error’s ward, then the law by indirection is held unconstitutional.
We feel that we are bound by the rules of construction applicable were the constitutionality of Section 22 of the act directly assailed. These rules are quite well understood, and it is unnecessary to repeat them here.
Would there be a necessary and obvious inconsistency between the section in question and the constitution? Is there no “fair course of reasoning,” no mode of interpretation, available, by which, without reading foreign matter into the law, the right of appeal may be granted to plaintiff in error ?
Proceeding then with such compass and chart as our guide, we think it not difficult to demonstrate that it was clearly the intention of the general *462 assembly to grant an appeal to the claimant, whether he be of the one class or the other; and that such right was granted.
The pertinent portion of Section 43 of the Workmen’s Compensation Act (Section 1465-90, General Code) is as follows: “The board shall have full power and authority to hear and determine all questions within its jurisdiction, and its decision thereon shall be final. Provided, however, in case the final action of such board denies the right of the claimant to participate at all in such fund on the ground that the injury was self-inflicted or on the ground that the accident did not arise in the course of employment, * * * then the claimant * * * may, by filing his appeal in the common pleas court,” etc.
The contention herein revolves around the proper construction to be given the words “such fund.” The claim made by the state and upheld by the court of appeals is that these words mean the fund created from the full premiums paid by the employers who pay into the fund.
We think that the contention thus made and upheld contemplates too narrow a construction of these words.
The fund with which the Industrial Commission deals is provided for by Section 22 of the act. There are three sources provided in the act from which moneys to satisfy claimants are available:
First. The fund created by the payment of full premiums of employers to the state.
Second. The funds of self-compensating employers, who, by express requirement of Section *463 22, before authorized to carry their own insurance, in the language of the act itself, “shall pay into the state insurance fund such amount or amounts as are required to be credited to the surplus in paragraph two of section seven hereof [Section 1465-54, General Code]This amount is five per cent, of the full premium.
Attention is called to the fact that the law requires this payment to be made into the state insurance fund, and the contribution so made by the self-compensating employer, although credited to the so-called surplus fund, is in fact made to the state insurance fund.
Third. The bond executed by the self-insuring employer, payable to the state for the benefit of injured and killed employes, which in legal effect is a contribution to the general insurance fund.
The general assembly invested the Industrial Commission with full discretion in the matter of allowing employers to carry their own insurance. The privilege was safeguarded, hedged about, and restricted. The amount of the bond, the financial responsibility of the applicant, the sufficiency of the surety, were all to be determined by the commission. The failure to observe any of the valid orders of the board on the part of the employer would work almost automatically to remove from the employer the privilege of self-compensation.
In the eyes of the law, this bond was substantially the same as cash; and, in theory, at least, constituted a part of the fund available for payment of compensation. And as a matter of general *464 knowledge it has so worked out in practice; fully justifying the theory of the law.
In contemplation of both the statute and constitution there is but one fund, and that is the State Insurance Fund.
The constitutional amendment, Section 35, Article II, provides for the creation of but one-fund. The so-called surplus fund is wholly of statutory creation, .and after all is only a part of the general fund.
It is thus demonstrated that to the extent mentioned this class of employers does contribute to the state insurance fund.
Section 24 of the act provides -that an employer paying the premiums provided by the act into the fund, or electing directly to compensate his injured employe, shall post in conspicuous places about his place of business notices stating the fact that he has made such payment and has complied with the provisions of said Section 22 and all the rules of the board made in pursuance thereof, and has been authorized directly to compensate such employes or dependents, and that the same,- when so posted, shall constitute sufficient notice to the employe of the fact.
It seems only just and fair to hold that an employe seeing such notice is entitled to rely on the fact that the state has properly secured to him everything which might be due him under the Workmen’s Compensation Act. The employe should not be the one to assume the risk of the inadequacy of the bond required by the board, or of the insolvency of the employer.
*465 The state itself has assumed the responsibility and the duty of attending to that matter. Section 29 of the act provides as follows: “Every employe, or his legal representative in case death results, who makes application for an award, or accepts compensation from an employer who elects, under section 22 of this act, directly to pay such compensation waives his right to exercise his option to institute proceedings in any court, except as provided in section 43 hereof.”
The necessary implication from this language is that employes of employers who pay into the fund, and employes of employers who compensate directly, are upon an equal and exact footing as to zvaiving the “right to exercise * * * option to institute proceedings in any court, except as provided in section 43.” Each would seem to be included in the exception and in the right to appeal.
Such fund, .the fund created by the contributions from all the different sources referred to, including the proportion paid by self-compensating employers, is a fund to be administered by the Industrial Commission to carry out the purposes of the act, and, if an employe of a self-compensating employer applies to the commission, and the commission denies his right to participate at all in such fund, it would seem that Section 43 would give him the right of appeal.
There is nothing in the act indicating a purpose that by applying to the commission such employe is expected to put into final hazard his whole right of recovery.
By the provision of Section 27 the commission *466 is required to institute suit against a self-compensating employer who refuses to pay its award in favor of an injured employe, and by the same section the commission is given authority to compromise such suit.
There is nothing in the act indicating a purpose that the commission has the right to finally and forever shut the door on such employe by refusing his application to participate at all in such fund.
Finally, in the construction of the words, “such fund,” this court is constrained to take the broader view and ascribe to the legislature the intention to permit employes of self-compensating employers to participate in the fund to the extent of their claims duly proven on appeal.
The claim is made by the state that the insurance fund would be endangered by such depletion, and that this broader construction would entitle employes of employers who have not contributed to participate, to the injury of the employes of employers who have paid the full premium into the state fund.
We think this claim wholly unwarranted by the facts and the light gained by the experience of nearly four years’ administration of the fund.
The five per cent, paid into this very fund by the self-compensating employers would easily cover the full payment of all such judgments; and, furthermore, if the claimant maintains his action on appeal, and the state pays him out of the fund, it, the state, has a clear cause of action to recover from such employer or his bondsmen the full amount of such judgment.
*467 The result then is full protection to the employe without ultimate loss to the state.
Section 43 is a general section, and covers all questions in a general provision with full power on the part of the board to hear and determine.
The provision is explicit, that, if the final action of the board denies the right of the claimant to participate at all in such fund, he may appeal.
There is nothing to indicate that a limitation is placed on the word “claimant.” It would seem to cover any employe referred to in Section 22; that is, an employe of an employer who pays in full to the fund as well as of one who compensates directly.
The state has chosen to stand between the employe and every class of employers. It has permitted the employer to give bond, has decided to carry on the suit in its own name when suit is necessary; and, if the state pays, when its board has assumed to find that an employe has no right, and a jury finds differently, only simple justice is done.
Section 43 says any final judgment shall be paid “out of the state insurance fund in the same manner,” etc.
It seems quite clear that the proper holding is to the effect that every provision in the entire law which looks to payment of compensation premiums by employers, whether direct or indirect, constitutes such payment a part of the fund.
The judgment of the court of appeals is therefore reversed.

Judgment reversed.

Wanamaker, Newman, Jones, Matthias, Johnson and Donahue, JJ., concur.